# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7483 | **DATE** | 7/27/2001 |
| **CASE TITLE** | Henry Manney v. Cook County Jail | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' Motion for Summary Judgment is Granted In Part and Denied In Part (#40). It is further ordered that Plaintiff's Motion for leave to file a Second Amended Complaint is Denied (#45). *A*←

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| x | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| AC6 | courtroom deputy's initials |
|---|---|

3
number of notices

JUL 3 0 2001
date docketed

IS
docketing deputy initials

7/27/01
date mailed notice

AC
mailing deputy initials

**Document Number**

54

ED-7
FILED FOR DOCKETING
01 JUL 27 PM 3: 23

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HENRY M. MANNEY,                    )
            Plaintiff,              )
                                    )
    v.                              )     97 C 7483
                                    )
MS. D. MONROE, SUPERINTENDENT )
MICHAEL MOORE, OFC. J. CHIN,  )           Magistrate Judge
OFC. J. MUELLER, AND CERMAK   )           Arlander Keys
HEALTH SERVICES OF COOK       )
COUNTY,                       )
                              )
            Defendants.       )

DOCKETED
JUL 3 0 2001

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, and Plaintiff's Motion for Leave to File a Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 15. Plaintiff Henry Manney ("Plaintiff" or "Mr. Manney") sued Defendants Denise Monroe, Michael Moore, John Mueller, Joseph Chin, and Cermak Health Services under 42 U.S.C. § 1983 ("Section 1983")(West 2001) for allegedly violating his constitutional and civil rights. Specifically, Mr. Manney claims that prison officials denied him treatment for his dental condition, exhibiting deliberate indifference to his serious medical needs, in violation of the

1



Eighth and Fourteenth Amendments to the United States Constitution.

He also seeks to amend his Complaint to add the County of Cook and

Jean Kirriazes as Defendants.  For the reasons set forth below, the

Court grants Defendants' Motion for Summary Judgment with respect

to Defendants Moore, Mueller, Chin, and Cermak Health Services, but

denies the Motion regarding Defendant Monroe.   The Court also

denies Plaintiff's Motion for Leave to File a Second Amended

Complaint to add the County of Cook and Jean Kirriazes as

Defendants.

## FACTS

In December 1996, Henry Manney was a detainee at Cook County

Jail - Division 11 ("CCJ").  (Plaintiff's Response to Defendant's

Statement of Material Facts ["Resp. to Def.'s SMF"] ¶ 2.)

Beginning in January 1997, Plaintiff began experiencing a

toothache.  (Defendant's Statement of Material Facts ["Def.'s SMF"]

¶ 5.)   He alleges that he verbally complained daily, but never

received treatment while at CCJ.

Cermak Health Services ("Cermak") provides dental treatment to

pretrial detainees at Cook County Department of Corrections

("CCDOC").   (Def.'s SMF ¶ 5.)  Ms. Monroe has been employed with

Cermak since May 1995 as a dental hygienist.  (Def.'s SMF ¶ 4.)

She is responsible for educating inmates on oral hygiene, screening

2

inmates for dental care, which includes teeth cleaning services and taking x-rays, and referring inmates to staff dentists for dental care that she is unlicenced to perform. (Def.'s SMF ¶ 6.) Ms. Monroe has authority to schedule dental examinations for patients at Cermak; however, she does not receive grievances from inmates. (Def.'s SMF ¶¶ 8-9.)

In 1997, Mr. Moore was the Superintendent of CCJ, (Def.'s SMF ¶ 39), where he reviewed inmate grievances pertaining to jail conditions, but not those pertaining to health care. (Def.'s SMF ¶¶ 40-41.) As such, Mr. Moore asserts that he did not receive any grievances submitted by Mr. Manney concerning his toothache. (Def.'s SMF ¶ 42.)

Mr. Mueller is a correctional social worker employed by the Cook County Sheriff's Department. (Def.'s SMF ¶ 25.) He processes inmate grievances, which entails reading the grievances, determining which department to direct them to, signing them, assigning them tracking numbers, then filing them with the appropriate department. (Def.'s SMF ¶ 26.) It is undisputed that Mr. Mueller has no authority to investigate or respond to an inmate's grievance, and has no control over an inmate's dental care. (Def.'s SMF ¶ 28.)

Mr. Chin is an assistant administrator of program services

employed by the Cook County Sheriff's Department. (Def.'s SMF ¶ 33.) He supervises religious and law library program services. (Def.'s SMF ¶ 34.) It is undisputed that Mr. Chin has no control over inmates' dental care. (Def.'s SMF ¶ 34.) Further, he neither receives nor processes grievances from inmates. (Def.'s SMF ¶ 35.) It is uncontested that Mr. Manney never had personal contact with Mr. Chin. (Def.'s SMF ¶ 36.)

Ms. Kirriazes is the Director of Continuous Improvement of Cermak Health Services. (Def.'s SMF ¶41.) She is allegedly responsible for reviewing inmates' health care grievances. (Def.'s SMF. ¶41.)

From December 1996 to January 1997, Mr. Manney contends that he suffered a minor toothache. (Def.'s SMF ¶ 12.) From February to April 1997, he claims that the pain worsened. (Manney Dep., at 53, Ex. 1 to Def.'s SMF.) From April to June 1997, he maintains that the pain became "a little unbearable". (Manney Dep., at 53, Ex. 1 to Def.'s SMF.) Finally, from June to September 1997, he attests that it was "ridiculous", "unbearable", and that he could not describe the pain. (Manney Dep., at 53, Ex. 1 to Def.'s SMF.) Mr. Manney contends that he wrote approximately thirty grievances

regarding his dental condition while detained at CCJ.[1]  (Resp. to Def.'s SMF ¶ 17.)  Defendants dispute this contention, maintaining that he submitted only four grievances: two dated March 30, 1997, one dated April 12, 1997, and another dated May 26, 1997.[2]  (Def.'s SMF ¶¶ 17, 19.)

Ms. Monroe, the dental hygienist, maintains that she never received any of Plaintiff's grievances.  (Def.'s SMF ¶ 9.)  Mr. Mueller, the correctional social worker, admits that he received four grievances that Mr. Manney submitted.  (Def.'s SMF ¶¶ 29-32.)  After determining that all four involved dental matters, Mr. Mueller responded by signing his and his supervisor's name, Mr. Chin.  (Def.'s SMF ¶¶ 29-32.)  He then filed the grievances with Cermak.  (Def.'s SMF ¶¶ 29-32.)  Mr. Chin asserts that he did not receive any

---

[1] There is an inconsistency concerning the number of grievances Plaintiff claims he submitted.  In Mr. Manney's Amended Complaint, he contends that he submitted four grievances regarding his dental condition since his first complaint to prison officials.  (Amended Complaint ¶ 14.)  He also admits in his Response to Defendants' Statement of Material Facts that he filed only four grievances.  (Resp. to Def.'s SMF ¶ 42.)  However, Plaintiff repeatedly denies filing only four grievances in response to other paragraphs of Defendants' Statement of Material Facts and asserts that he submitted over thirty. (Resp. to Def.'s SMF ¶¶ 17, 30, 31, 32, 35, 44, 45.)

[2] In these grievances, Plaintiff urgently requested that he be given stronger pain medication than over the counter medicine or that his tooth be pulled.  (*See* Grievances, Ex. 8 to Def.'s SMF.)

5

grievances from Mr. Manney. (Def.'s SMF ¶ 35.) He explains that he authorized Mr. Mueller to sign his name to grievances to merely expedite the process. (Def.'s SMF ¶ 35.) Admittedly, Plaintiff had no direct contact with Mr. Mueller, (Manney Dep., at 37, Ex. 1 to Def.'s SMF), or personal contact with Mr. Chin. (Def.'s SMF ¶ 36.)

Mr. Moore, the Superintendent of CCJ, denies receiving any health care grievances, including those submitted by Plaintiff. (Def.'s SMF ¶ 42.) He contends that Ms. Kirriazes, a Director of Cermak, reviews such grievances.[3] (Def.'s SMF ¶ 42.) Mr. Manney also claims that his family telephoned Superintendent Moore to complain about Plaintiff's dental condition. (Plaintiff's Statement of Additional Material Facts ["Pl.'s SMF"] ¶ 1.) Plaintiff further asserts that, in March 1997, he sent Mr. Moore six or seven letters requesting dental assistance, but received no response. (Pl.'s SMF ¶ 1.) However, there is no evidentiary support of these letters or phone calls in the record.

---

[3] As explained *infra*, Superintendent Moore stated in an affidavit that he does not receive health care grievances from inmates but that Ms. Kirriazes does. Plaintiff argues in his Motion to Strike that Mr. Moore does not have personal knowledge that Ms. Kirriazes actually received Mr. Manney's health care grievances. While this may be true, it is moot, as the grievances Mr. Manney filed are signed by Ms. Kirriazes under "action taken." (*See* Grievances, Ex. 8 to Def.'s SMF.) Therefore, she undoubtedly received the grievances, which bear her signature.

There is a disputed issue of material fact concerning the number of times Mr. Manney saw a dentist while at CCJ. Mr. Manney admits that he saw a dentist in February or March 1997, and that this dentist probed his mouth, took x-rays, and gave him Motrin. Plaintiff further admits seeing a dentist, again, in June or July of 1997, who examined him, took x-rays, and gave him Motrin and Tylenol. (Resp. to Def.'s SMF ¶ 15; Manney Dep., at 39-41, Ex. 1 to Def.'s SMF.) Mr. Manney adamantly denies ever seeing a dentist again while in CCJ. (Resp. to Def.'s SMF ¶ 23.) Defendants, however, contend that Mr. Manney saw a dentist at least four times while held at CCJ, specifically on February 24, March 20, April 17, and June 12, 1997. (Def.'s SMF ¶¶ 14-18.) Mr. Manney acknowledges that he took "a lot of trips down [to dental services]" and received Tylenol or Motrin from nurses.[4] (Manney Dep., at 47, Ex. 1 to

---

[4]Plaintiff's dental record reflects entries for four dates, with a dentist's signature for three of those dates. (Outpatient Dental Record, Ex. 6 to Def.'s SMF.) "Renew meds" is written for one date and no dentist's signature appears next to it. "Med rx" and a dentist's signature appears next to the three other entries. The rest of the form is illegible. The record also contains a consent to dental treatment form, signed by Mr. Manney, dated February 24, 1997. (Consent Form, Ex. 6 to Def.'s SMF.) The form reflects a dentist's diagnosis of Plaintiff's condition as a cavity and a recommended course of treatment as surgical extraction if necessary (although most of the form is illegible). Undisputedly, Mr. Manney was only prescribed Tylenol and Motrin for his pain, and no teeth were ever removed while at

(continued...)

Def.'s SMF.)

Mr. Manney contends that Ms. Monroe, the dental hygienist, was deliberately indifferent to his dental condition. He alleges that he began complaining to her in January 1997, and continued to complain through August 1997. (Resp. to Def.'s SMF ¶ 9.) It is undisputed that Ms. Monroe visited Mr. Manney in his cell to provide dental care in January or February 1997.[5] (Resp. to Def.'s SMF ¶ 11.) During this visit, Mr. Manney claims that she examined a lump in his mouth, remarked, "oh, that is kind of bad", and told him she would schedule an appointment. (Resp. to Def.'s SMF ¶ 11, Manney Dep., at 30-32, Ex. 1 to Def.'s SMF.) Ms. Monroe then scheduled a dental appointment for Mr. Manney. (Def.'s SMF ¶ 13.) It is undisputed that, after this visit from Ms. Monroe, Mr. Manney saw a dentist either in February or March 1997. (Resp. to Def.'s SMF ¶ 15.)

There are, however, disputed issues of material fact concerning

_____

(...continued)
the CCJ.

[5] While it is undisputed that a dental visit occurred, it is unclear as to the exact month of its occurrence. Plaintiff states that the visit took place in January or February of 1997, (Resp. to Def.'s SMF ¶ 11), while Ms. Monroe maintains that it took place in February 1997. (Def.'s SMF ¶ 11.) While the exact date is unclear, it is immaterial, as both parties acknowledge its occurrence.

how many times Ms. Monroe screened Mr. Manney for dental care. Mr. Manney contends that he only saw Ms. Monroe once for dental care, (Resp. to Def.'s SMF ¶ 10), while Ms. Monroe insists that she screened him twice for care, once in February 1997 and, again, on September 3, 1997, after he submitted a health services request form.[6] (Def.'s SMF ¶¶ 10, 11, 22.) She further asserts that she scheduled a dental appointment for him on September 10, 1997. (Def.'s SMF ¶ 23.) Other than the January or February cell visit, Mr. Manney denies receiving dental care from Ms. Monroe and denies seeing a dentist in September 1997 or at any time subsequent to June or July 1997. (Resp. to Def.'s SMF ¶¶ 10, 23.) Mr. Manney claims that, after Ms. Monroe's visit to his cell in January or February 1997, he repeatedly complained to her as she walked by his cell, but she ignored him and failed to schedule a dentist appointment, except

---

[6] Plaintiff submitted a Health Services Request Form dated September 3, 1997. (Def.'s SMF ¶ 21.) The response portion of the form reflects the words "appt 9/10/97", signed by "D. Monroe", and dated "9-3-9". (Health Care Request Form, Ex. 7 to Def.'s SMF.) There is no dentist's signature and it is unclear – based on this form – whether Mr. Manney actually saw a dentist in September 1997. His outpatient dental record indicates that the last dentist appointment Mr. Manney had while at the CCJ was on June 12, 1997 – not September 1997. (Outpatient Dental Record, Ex. 6 to Def.'s SMF.)

for the one in either February or March 1997.[7]   (Resp. to Def.'s SMF ¶¶ 9-10.)   It is undisputed that Ms. Monroe had no further contact with Mr. Manney for dental care after the alleged September screening on September 3, 1997.  (Def.'s SMF ¶ 24.)

Between October and November 1997, Mr. Manney left CCJ and was transferred to Joliet Correctional Center ("Joliet") where he saw a "whole team of medical", but his dental condition was not addressed.  (Resp. to Def.'s SMF ¶¶ 46-49.)  He maintains that he does not know whether or not he saw a dentist at Joliet.  (Resp. to Def.'s SMF ¶ 48; Pl.'s SMF ¶ 4.) After remaining there for approximately a week, he was transferred to Centralia Correctional Facility ("Centralia") in November or December 1997.  (Resp. to Def.'s SMF ¶¶ 49-50.)  At Centralia, he received dental attention, an examination, x-rays, and pain killers.  (Def.'s SMF ¶ 51.)  The dentist at Centralia attempted to pull Mr. Manney's tooth, but was unsuccessful.   (Manney Dep., at 50, Ex. 1 to Def.'s SMF.) Consequently, he sent Mr. Manney off the premises, where Mr. Manney had his tooth pulled.  (Resp. to Def.'s SMF ¶ 52.)  Ultimately, he had four teeth pulled while housed at Centralia.  (Pl.'s SMF ¶ 6.)

---

[7]Although Plaintiff admits to seeing a dentist in June or July 1997, there is no evidence that Ms. Monroe scheduled the dental appointment.

In sum, Mr. Manney asserts that, despite his grievances and alleged complaints, he was denied adequate dental treatment, and that prison officials were deliberately indifferent to his medical needs. Mr. Manney claims that, as a result of this denial, he suffered from mouth pain, migraines, earaches, sleep loss, and weight loss.[8] (Resp. to Def.'s SMF ¶ 12; Pl.'s SMF ¶ 5.) Plaintiff contends that he still suffers from pain while eating. (Plaintiff's Response to Defendants' Motion for Summary Judgment, at 5.)

## PROCEDURAL HISTORY

On April 1, 1998, Mr. Manney filed a *pro se* Complaint, alleging that his constitutional rights had been violated. After obtaining an attorney, Plaintiff filed a First Amended Complaint on May 21, 1999, alleging that Defendants acted or failed to act with deliberate indifference to his serious medical needs, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Defendants filed a Motion for Summary Judgment on March 23, 2001. Plaintiff then filed a Motion for Leave to File a

---

[8]In Plaintiff's First Amended Complaint, he alleges that his tooth partially rotted and discharged noxious fluid, that his mouth bled constantly, and that his gums ached and were irritated. (Amended Complaint ¶ 15.) However, neither party addresses these allegations in their briefs, and Plaintiff does not mention these symptoms again or substantiate the allegations beyond the pleadings. Consequently, the Court will not consider these symptoms in its analysis.

11

Second Amended Complaint on April 27, 2001, seeking to add the County of Cook and Jean Kirriazes as Defendants.

## DISCUSSION

### I.  Summary Judgment Standard

Under Rule 56(c), summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). When a motion for summary judgment is made and supported, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must go beyond her pleadings and present specific facts affirmatively showing a genuine factual dispute exists for resolution at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The adverse party's evidence is to be "believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  The moving party has the burden of establishing an absence of genuine issue of material fact. *Id.* at 256.  A genuine issue of material fact exists when viewing the record in a light most favorable to the non-movant, there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-movant. *Id.* at 248.  More

12

specifically, materiality is evident where there are factual disputes that may affect the outcome of the lawsuit under the governing law. *Id*. at 248. At the summary judgment stage, the judge's function is "not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. The threshold inquiry is whether there are any genuine factual issues that can only be resolved by a jury at trial. *Id*. at 250.

## II. Defendants' Motion for Summary Judgment

Defendants argue that Plaintiff has failed to show that each Defendant was personally aware of, or that each exhibited deliberate indifference, to Plaintiff's medical needs. For the reasons discussed *infra*, the Court grants summary judgment in favor of Defendants Moore, Chin, and Mueller, because Plaintiff has failed to show that these individual Defendants had personal involvement in the alleged deprivation of his constitutional rights. The Court also grants summary judgment in favor of Cermak Health Services because it is not a suable entity. The Court finds, however, that Defendant Monroe, as a dental hygienist, was personally involved in Plaintiff's dental care, and, therefore, a Section 1983 cause of action may be sustained against her.

## A.  Section 1983 Liability

Individual liability under Section 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir. 1984). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). The focus must be on whether any of the defendants had the personal involvement necessary to permit a finding of liability. *Id.* at 992. Significantly, the doctrine of respondeat superior does not apply in Section 1983 actions. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). To hold supervisors liable for the conduct of a subordinate, a supervisor must be personally involved in the conduct. *Id.* Mere negligence in failing to detect and prevent subordinates' misconduct is not enough. *Id.* The supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" to permit a finding of supervisory liability. *Id.* Mere supervisory status, without more, will not create Section 1983 liability. *Id.*

14

### 1.    Defendants Mueller and Chin

Plaintiff argues that Mr. Mueller and Mr. Chin were aware of his dental condition and acted with deliberate indifference to it. He insists that they reviewed his grievances and were aware of his dental condition, but failed to take steps to insure that Plaintiff received treatment.   However, neither Defendants Mueller nor Chin were personally involved in the alleged deprivation of Plaintiff's Eighth or Fourteenth Amendment rights.

Significantly, neither Mr. Mueller nor Mr. Chin had the authority to respond to or to investigate inmate grievances.   These two Defendants also did not have any control over Plaintiff's dental care.   Mr. Mueller merely administratively processed the grievances by assessing which department had the authority to handle them, and then directed them to the appropriate department.   While Mr. Mueller acknowledges receiving four grievances submitted by Mr. Manney (two dated March 30, 1997, one dated April 12, 1997, and another dated May 26, 1997)[9], after determining that they involved a dental

---

[9]Plaintiff moves the Court to strike documentary exhibits such as the health services request form, dental records, and the aforementioned grievances attached to Defendants' Statement of Material facts for want of authentication.   Defendants subsequently filed the appropriate affidavit, authenticating these documents, however, and, therefore, corrected the error. Consequently, the Court will not strike the documentary exhibits.

matter, Mr. Mueller signed his and Mr. Chin's name to them, assigned them tracking numbers, and then filed them with Cermak. Therefore, he did all that he could do within his authority with respect to the grievances. *See, e.g., Diaz v. McBride*, No. 3:93-CV-176RM, 1994 WL 750707, at *4 (N.D. Ind. Nov. 30, 1994)(holding that a plaintiff could not establish personal involvement, and subject a prison official to liability under Section 1983, merely by sending the official various letters or grievances complaining about the actions or conduct of subordinates); *Johnson v. Lane*, 596 F. Supp. 408, 409 (N.D. Ill. 1984) (fact that prisoner provided warden with copies of grievances prisoner had filed with institutional inquiry board and assistant warden held insufficient to constitute personal involvement for Section 1983 liability).

Furthermore, Mr. Chin did not even receive or process grievances. Rather, he merely gave Mr. Mueller the authority to place his signature on the grievance forms to expedite the process. Additionally, Plaintiff admittedly never had personal contact with either Mr. Mueller or Mr. Chin. Furthermore, Plaintiff admits that he named Mr. Mueller and Mr. Chin as Defendants solely because their names appeared on the grievance forms.[10] *See Lamkey v. Roth*, No. 93

---

[10]Defendants argue that any challenge to the grievance

(continued...)

16

C 7080, 1997 WL 89125, at *5 (N.D. Ill. Feb. 26, 1997)(where only evidence of warden's involvement in alleged constitutional violation was his signature on the grievance report, there was not a sufficient showing of personal involvement necessary for Section 1983 liability). Therefore, because both Mr. Mueller and Mr. Chin did not have the personal involvement necessary for Section 1983 liability, the Court grants summary judgment to them.

### 2. Defendant Moore

Plaintiff contends that Superintendent Moore knew of Plaintiff's declining dental condition, but failed to respond to Plaintiff's alleged requests for treatment, and never took steps to insure that Plaintiff received dental treatment. The Court rejects Mr. Manney's contentions, and finds that Mr. Moore was not personally involved in the alleged deprivation of Plaintiff's constitutional rights.

---

[10](...continued)
procedures at CCDOC are not actionable under Section 1983, because they are procedural and not substantive rights under the Due Process Clause. While Defendants are correct, see *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995), Plaintiff is not challenging the grievance procedure. Plaintiff is merely arguing, albeit unsuccessfully, that Mr. Mueller and Mr. Chin were personally involved in his alleged deprivation of dental care because they had some responsibility, though limited, in overseeing inmate dental care. Mr. Manney, however, has failed to show Mr. Mueller and Mr. Chin's personal involvement, which is a necessary element of a Section 1983 deliberate indifference claim.

Mr. Moore vehemently denies ever receiving Plaintiff's grievances. Therefore, according to Mr. Moore, he did not even know about Plaintiff's alleged deprivation of dental care. He maintains that he does not receive or review health care grievances because Ms. Kirriazes, Director of Continuous Improvement at Cermak, receives them.[11] Because he did not even know that Plaintiff was suffering from a dental problem, he could not have been personally involved in the alleged deprivation of Plaintiff's dental care. While Plaintiff claims that he wrote, between February and September 1997, six or seven letters to Mr. Moore requesting dental care, and notifying him of his dental problems, there is no documentary evidence in the record to substantiate such an allegation.

---

[11] Plaintiff moves the Court to strike certain paragraphs in Mr. Mueller and Mr. Moore's affidavits for statements not based on the personal knowledge of the affiants. Specifically, Plaintiff references paragraphs asserting Cermak's receipt of Plaintiff's grievances, Ms. Kirriazes' receipt and review of Plaintiff's grievances, as well as the scope of Ms. Kirriazes' duties. For example, Mr. Moore states that he did not receive Plaintiff's grievances, but that Ms. Kirriazes did. While Plaintiff argues that such a statement is not based on personal knowledge, the Court notes that the four grievances submitted by Mr. Manney that are in the record were all signed and reviewed by Ms. Kirriazes. (*See* Grievances, Ex. 8 to Def.'s SMF.) Therefore, to the extent that Mr. Moore's statements are not based on personal knowledge, it is a moot point, as the record evidence indicates that Ms. Kirriazes did receive the grievances. In any event, as discussed *supra*, both Mr. Moore and Mr. Mueller are being dismissed from this lawsuit for lack of personal involvement.

Furthermore, while Plaintiff alleges that his family members telephoned Mr. Moore on his behalf to complain about his toothache, Mr. Manney failed to depose family members attesting to the alleged phone calls to Mr. Moore.

In *Vance v. Peters*, *supra*, 97 F.3d at 989, an inmate claimed that she and other prisoners wrote letters to the warden advising her of prison officials' deliberate indifference to her medical needs for her broken arm. The plaintiff did not offer any corroborative evidence with respect to the letters. *Id.* at 994. She did not supply a copy of the letters, nor was a letter produced from any other source. *Id.* Additionally, the prisoners who allegedly wrote letters to the warden on her behalf were either not deposed, or were not asked if they had written such a letter. *Id.* Accordingly, the Seventh Circuit held that there was insufficient evidence to permit a jury to determine that the warden was sufficiently alerted of the denial of medical treatment, and affirmed the District Court's grant of summary judgment to the warden. *Id.*

Likewise, Mr. Manney does not offer any copies of the alleged letters he wrote to Mr. Moore, as the inmate in *Vance* failed to do. Additionally, Plaintiff failed to depose family members about their alleged phone calls to Mr. Moore on Plaintiff's behalf, requesting

19

dental care, similar to the inmate in *Vance*, who failed to depose fellow prisoners about the alleged letters written to the warden requesting medical care. Because Mr. Manney does not provide any documentary evidence or deposition testimony, he fails to offer the evidentiary support necessary to create a genuine issue of material fact concerning Mr. Moore's knowledge of Mr. Manney's alleged denial of dental treatment.[12]

Plaintiff accuses Defendants of "passing the buck" by asserting that all grievances were forwarded to Ms. Kirriazes. However, the simple fact is that Mr. Mueller processed the grievances to the extent of his authority, and neither Mr. Chin nor Mr. Moore received any grievances at all. They were not "bury[ing] their head[s] in the sand and ignor[ing]" Plaintiff's dental condition, as Plaintiff contends. Mr. Mueller addressed and responded to the grievances; thus, he did not ignore them. Mr. Chin and Mr. Moore were not even aware of anything to "bury" their heads from.

---

[12] Furthermore, even if he had received the grievances and letters, there arguably would still not be the requisite personal involvement necessary to hold him liable under Section 1983. *See, e.g., Williams v. Manilla*, No. 98 CV 5639, 2000 WL 1307769, at *7 (N.D. Ill. Sep. 12, 2000)(finding that "complaint letters" sent to administrator of health care unit insufficient to establish personal involvement for Section 1983 liability).

### 3. Defendant Cermak Health Services

Because Cermak is a non-suable entity, the Court grants summary judgment for Cermak. Capacity to be sued is determined by the forum state's law. Fed.R.Civ.P. 17(b). Since Cermak is located in Illinois, the Court must look to Illinois law to determine whether it is a suable entity. *See id.* Under Illinois law, a defendant must have "legal existence, either natural or artificial." *Glass v. Fairman*, 992 F. Supp. 1040, 1043 (N.D. Ill. 1997) (*quoting Bailes v. Streator Police Dept.*, No. 96 C 5610, 1997 WL 162907, at *3 (N.D. Ill. Mar. 27, 1997)). Departments of a governing body which have no legal existence separate from the governing body cannot be sued under Section 1983. *Id.* Cermak is a department within Cook County, with no legal existence, and, therefore, is not a suable entity. *See, e.g., Egebergh v. Sheahan*, No. 96 C 5863, 2001 WL 15945, at *9 (N.D. Ill. Jan. 4, 2001)(finding that Cermak Health Services is a non-suable entity); *Collier v. Township of Cicero*, No. 98 C 8071, 1999 WL 1046414, at *2 (N.D. Ill. Nov. 10, 1999)(same). Both Plaintiff and Defendants acknowledge that Cermak is a non-suable entity.[13] Accordingly, the Court grants summary judgment for Cermak Health Services.

---

[13] Furthermore, Cermak never received service of process.

21

In sum, the Court grants Defendants' Motion for Summary Judgment with respect to Defendants Cermak Health Services, Chin, Mueller, and Moore. Because Plaintiff has failed to establish a Section 1983 cause of action against these Defendants, the Court does not need to substantively address Plaintiff's Eighth and Fourteenth Amendment claims with respect to them.

### 4. Defendant Monroe

Defendant Monroe was personally involved in Plaintiff's dental care; therefore, a Section 1983 action may be sustained against her for the alleged deprivation of Plaintiff's constitutional rights. As a dental hygienist, Ms. Monroe was responsible for screening inmates' dental care and arranging dental appointments for inmates. It is uncontested that Ms. Monroe provided dental care to Plaintiff while he was detained at CCJ. Specifically, she screened him in his cell in January or February of 1997. Although there is a dispute as to how many times Ms. Monroe screened Plaintiff, she undoubtedly tended to his dental care. Plaintiff claims that he had further contact with Ms. Monroe when she walked passed his cell, and he voiced his dental complaints to her - complaints which Plaintiff claims were ignored. Furthermore, Ms. Monroe admits that she had the ability to schedule dental exams for patients. Because Ms. Monroe had some involvement with Plaintiff's dental care, Plaintiff

has sustained the personal involvement necessary to proceed with a Section 1983 claim. Accordingly, the Court will now substantively address the merits of Plaintiff's Complaint against Ms. Monroe.

### B. Plaintiff's Eighth and Fourteenth Amendment Claims

Summary Judgment for Defendant Monroe is denied, because there are issues of material fact regarding whether Plaintiff's dental condition was sufficiently serious; whether the treatment Plaintiff received was woefully inadequate; how many times Plaintiff actually saw a dentist; how many times Plaintiff had contact with Ms. Monroe; and whether Ms. Monroe exhibited deliberate indifference to Plaintiff's serious medical needs.

State pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998). Hence, when an individual is unable to care for himself due to the deprivation of his liberty, the state has an affirmative duty to protect the individual, because it has restrained his freedom to act for himself. *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Tesch*, 157 F.3d at 472. Significantly, the Fourteenth Amendment protects pretrial detainees under the same standard as the Eighth Amendment. *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000).

23

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. Amend. VIII. This prohibition includes deliberate indifference to prisoners' serious medical needs, which is considered unnecessary and a wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment prohibition when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the plaintiff must suffer from an objectively serious medical need. *Id.; see also Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). Second, the prison official must have acted, or failed to act, with deliberate indifference to the plaintiff's serious medical need. *Id.*

## A. Serious Medical Needs

There is a genuine issue of material fact as to whether Plaintiff's dental condition was sufficiently serious. A reasonable jury could find in favor of Plaintiff as to the seriousness of his condition.

An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of a doctor's attention." *Zentmeyer*, 220 F.3d at 810 (*quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). While

24

not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim", serious medical needs are far-more encompassing than those that are life threatening. *Gutierrez*, 111 F.3d at 1371-72. It is sufficiently serious if "the deliberately indifferent denial of medical care for such a condition - resulting in needless pain and suffering - is 'repugnant to the conscience of mankind' and offensive to 'evolving standards of decency'". *Id.* at 1371 (*quoting Estelle*, 429 U.S. at 106).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain". *Id.* at 1373 (citations and internal quotations omitted). Furthermore, the Seventh Circuit recognized in a recently decided case that "dental care is one of the most important medical needs of inmates." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (*quoting Ramos v. Lamm*, 639 F.2d

559, 576 (10th Cir. 1980)).[14]

Other circuits have held that adequate dental care constitutes a serious medical need. *See, e.g., Chance v. Armstrong*, 143 F.3d 698, 702-03 (2nd Cir. 1998) (reversing dismissal of complaint where inmate's allegations that he suffered from extreme pain, deteriorating teeth, and difficulty with eating, when prison dentists would not fill his cavities, were sufficient to support a serious medical need); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-201 (9th Cir. 1988) (reversing grant of summary judgment for defendants, where inmate denied of his replacement dentures, suffered from breaking teeth, bleeding and infected gums, pain, and weight loss due to an inability to eat, demonstrated a serious dental condition); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (holding that a three week delay in sending dental care referral, with knowledge of inmate's swollen and infected mouth and suffering, could support a finding of an Eighth Amendment violation).

As in *Wynn* and *Chance*, Mr. Manney asserts that he suffered from

---

[14]In *Wynn*, the plaintiff inmate was deprived of his dentures. 251 F.3d at 591. Because of this deprivation, he was allegedly unable to chew his food, his eating was allegedly impeded, and he allegedly suffered from bleeding, headaches, humiliation, shame, and disfigurement. *Id.* The Seventh Circuit held that the plaintiff's allegations supported an Eighth Amendment claim and survived a motion to dismiss. *Id.* at 594.

pain, headaches, and inability to eat. As in *Hunt*, Mr. Manney also
alleges that he suffered from weight loss due to his impeded ability
to eat. Additionally, Mr. Manney claims that he suffered from
mental distress. Plaintiff contends that his condition began around
January 1997 and continued to decline through April 1997, that the
pain became unbearable from April to June 1997, and that it finally
became indescribable from June to September 1997. He insists that
he still experiences pain when eating. Most convincing, Plaintiff
ultimately had four teeth pulled after being transferred to
Centralia in November or December 1997. Moreover, Ms. Monroe
recognized that Plaintiff's dental condition was serious enough to
schedule a dental appointment for treatment when she examined
Plaintiff's mouth in his cell in January or February 1997, and,
allegedly, again in September 1997.[15] Viewing the facts in a light

---

[15]Plaintiff admittedly saw a dentist in February or March
1997, after Ms. Monroe screened him in January or February 1997.
He claims that the dentist told him that he had cavities and that
his tooth might need to be surgically extracted. Although
Plaintiff allegedly complained to Ms. Monroe about his increasing
pain, she never scheduled a follow-up dentist appointment to have
his tooth removed. Plaintiff denies that Ms. Monroe screened him
again on September 3, 1997, and disputes that he saw a dentist in
September 1997, (Resp. to Def.'s SMF ¶¶ 10, 23), which Ms. Monroe
claims she scheduled. Although the bottom portion of the health
services request form, which Plaintiff submitted on September 3,
1997, reflects that Ms. Monroe responded to the request by
scheduling an appointment for September 10, 1997, there is no
proof that Mr. Manney actually saw a dentist on that date, or at
(continued...)

favorable to Plaintiff, a reasonable jury could find that Plaintiff suffered from a serious medical need.

Defendants argue that, since Plaintiff's dental problems were not immediately addressed when he was transferred to Joliet in October or November 1997, and because the course of treatment at Centralia in November or December 1997 was not extensive, but similar to his treatment at CCJ,[16] his condition did not demonstrate

---

(...continued)
any time in September. In fact, to the contrary, Mr. Manney's outpatient dental record indicates that the last dentist appointment Mr. Manney had while at the CCJ was on June 12, 1997 – not September 1997. (Outpatient Dental Record, Ex. 6 to Def.'s SMF.)

[16]At Centralia, Mr. Manney received an examination, x-rays, and pain relievers, similar to the treatment he received at CCJ. In addition, however, Mr. Manney's problematic tooth was pulled, as well as three others over the course of his stay at Centralia. Defendants correctly argue that Plaintiff presented no medical evidence to substantiate that the extraction of his four teeth at Centralia were attributable to the *delay* in medical treatment. This, indeed, is true and problematic for Plaintiff's case. The Seventh Circuit has stated that "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996); *see also Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir. 1988)(finding that prisoner failed to produce any evidence to sustain allegation that he suffered permanent damage as a result of delay of medical treatment). Plaintiff has failed to produce any evidence to substantiate that a delay in treatment caused the tooth decay, resulting in four teeth being pulled. However, Plaintiff's deliberate indifference claim is not limited merely to the effects of the alleged delay in treatment, but further concerns

(continued...)

seriousness. However, as Plaintiff points out, he was only at Joliet for one week, and did not know whether a dentist was present when he was seen by a "whole team of medical". (Pl.'s SMF ¶ 4; Resp. to Def.'s SMF ¶48.) Furthermore, the course of treatment at Centralia actually negates Defendants' argument. It is undisputed that Plaintiff ultimately had four teeth pulled while at Centralia.[17] Accordingly, there is a genuine issue of material fact concerning the seriousness of Plaintiff's dental condition. Because Mr. Manney has satisfied the "sufficiently serious" component of his claim, the Court next looks to see whether there is a genuine issue of material fact as to whether Ms. Monroe acted with deliberate indifference toward his condition.

## B. Deliberate Indifference

There are also genuine issues of material fact as to whether Defendant Monroe acted, or failed to act, with deliberate

---

(...continued)
the pain and suffering he allegedly experienced from January 1997 to September 1997 - pain and suffering that a factfinder could more likely believe, given that Mr. Manney ultimately had to have four teeth pulled.

[17]Defendants also argue that, because no antibiotics were prescribed to Plaintiff by the dentist at CCJ, he did not suffer from an infection, and, therefore, his condition was not serious. However, the fact that no antibiotics were prescribed could be viewed by a factfinder as evidence of deliberate indifference to a serious medical condition.

indifference to Plaintiff's serious medical needs; whether the treatment Plaintiff received was woefully inadequate; how many times Plaintiff actually saw a dentist; how many times Plaintiff had contact with Ms. Monroe; and how many times he received dental care from Ms. Monroe. A reasonable jury could find in favor of Plaintiff as to Defendant's deliberate indifference.

Deliberate indifference requires "a state of mind more blameworthy than negligence", but something less than purposeful or knowing conduct.[18] *Farmer*, 511 U.S. at 835-6. Instead, the requisite *mens rea* is equated to criminal recklessness. *Id.* at 839-40. Eighth Amendment liability does not attach to a prison official for "denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The appropriate inquiry is "whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently

---

[18]While Defendant is correct that disagreements over the course of medical treatment between an inmate and a physician are not actionable under Section 1983, *see Chance*, *supra*, 143 F.3d at 703, Mr. Manney does not allege that he was a victim of medical malpractice. Instead, he contends that he was wholly deprived of adequate dental treatment for his toothache.

substantial 'risk of serious damage to his future health.'" [19]  *Id.*
at 843 (*quoting Helling v. McKinney*, 509 U.S. 25, 35 (1993)). The
Eighth Amendment claimant must satisfy a knowledge element by
showing that the prison official was subjectively aware of the risk.
*Id.* at 837.  The claimant must also satisfy a response element by
showing that the prison official acted with reckless disregard
toward the serious medical need by "inaction or *woefully inadequate*
*action.*"   *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir.
1999)(emphasis added)(*quoting Hudson v. McHugh*, 148 F.3d 859, 863
(7th Cir. 1998)).  It is sufficient to show "the official acted or
failed to act despite his knowledge of a substantial risk of serious
harm." *Farmer*, 511 U.S. at 842.  Even if prison officials are aware

---

[19]In Defendants' Motion for Summary Judgment, Defendants
state that Plaintiff must show "at a minimum, that the prison
officials have realized there was *imminent* danger and have
refused - consciously refused, knowingly refused - to do anything
about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987)
(emphasis added).  However, in the medical care context, Mr.
Manney does not have the heavy burden that Defendants suggest.
Defendants quote this "imminent danger" requirement from a
Seventh Circuit case involving an inmate who requested that his
cell remain locked, when all other cells were opened, for fear of
being victimized by violence.  *Id.* at 701.  *Campbell* is not a
case concerning inadequate medical care, but one concerning the
failure to protect an inmate's safety.  The Supreme Court
announced in *Farmer,* a post-*Campbell* decision, that the defendant
must be aware of a *substantial risk* of serious harm to the
plaintiff, not realize that *imminent* danger lurked.  *Farmer*, 511
U.S. at 834.

of a substantial risk of serious harm, they are not liable if "they responded reasonably to the risk, even if the harm was not ultimately averted." *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000)(citation omitted). The court must look at the totality of Plaintiff's medical care when considering whether the care illustrates deliberate indifference. *Gutierrez*, *supra*, 111 F.3d at 1375.

In *Reed*, the court found that, because the inmate's overall medical care was not continuous, there were material facts in dispute as to whether his care was woefully inadequate, rising to the level of deliberate indifference. 178 F.3d at 855-56. In *Reed*, the inmate suffered from a "panoply of ailments" requiring a medically prescribed diet and medication. *Id.* at 851. He was allegedly repeatedly denied access to food and medication for three to five day intervals. *Id.* The inmate sent three letters to prison officials (which the defendants did not deny receiving), and submitted multiple grievances over the course of two years, complaining about his deprivations of medicine and food. *Id.* at 854. Although the defendants responded to the inmate's third letter by remedying the situation, the court found that the defendants had ignored the first two letters that the inmate had sent, resulting

in almost two years of the alleged deprivations of food and medicine. *Id.* at 855. The court found that the repeated deprivations were not isolated occurrences of neglect, that the inmate had satisfied his burden of showing that the defendants' response was inadequate, and that the situation the inmate described demonstrated a "prototypical case of deliberate indifference". *Id.*

Furthermore, in *Chavez v. Cady*, 207 F.3d 901 (7th Cir. 2000), the plaintiff alleged that he suffered from a serious medical need (a perforated appendix), and that the defendants were deliberately indifferent to his condition. *Id.* at 902. Although an expert witness testified that the nurse defendant had complied with the applicable standard of care in treating the plaintiff, the court, nonetheless, held that there were material facts in dispute as to whether the nurse's care in providing laxatives, and not making sure that he promptly saw a doctor, exhibited deliberate indifference. *Id.* at 903, 905; *see also Bolden v. Zernicke*, No. 94 C 6203, 1999 WL 731780, at * 2, 8 (N.D. Ill. Aug. 30, 1999)(rejecting summary judgment motion where plaintiff suffered from a benign, but painful, tumor on right shoulder, and doctor merely prescribed Tylenol and physical therapy, but did not surgically remove tumor).

In the case *sub judice*, as in *Reed,* a reasonable jury could conclude that Plaintiff's alleged repeated deprivations of adequate

dental treatment were not isolated occurrences. While Mr. Manney admittedly saw a dentist in February or March 1997 and June or July 1997, the record indicates that he only received Motrin and Tylenol for his pain, despite his alleged constant complaints of mouth pain, migraines, earaches, sleep loss, and weight loss.[20] As in *Chavez* and *Bolden*, a reasonable jury could conclude that merely treating Mr. Manney's dental condition with these pain relievers (similar to laxatives in *Chavez* and Tylenol in *Bolden*) was wholly inadequate, especially considering that he ultimately had four teeth pulled while at Centralia in November 1997. Although Ms. Monroe responded to Plaintiff's dental needs by scheduling a dental appointment in February 1997, and, allegedly, again in September 1997,[21] a jury could reasonably find, similar to *Chavez*, that Ms. Monroe repeatedly ignored Mr. Manney's requests to see a dentist, or ensure that he

---

[20]The only evidence in the record regarding Plaintiff's treatment is the Outpatient Dental Record. (Outpatient Dental Record, Ex. 6 to Def.'s SMF.) Although the record reflects entries with "renew meds" and "med rx" noted, the medication prescribed is not specified. Both Plaintiff and Ms. Monroe admit that he received Tylenol and Motrin for his pain, and that he never received any antibiotics.

[21] Mr. Manney vehemently disputes that he saw a dentist in September 1997. Significantly, his outpatient dental record indicates that the last dentist appointment Mr. Manney had while at the CCJ was on June 12, 1997 – not September 1997. (Outpatient Dental Record, Ex. 6 to Def.'s SMF.)

34

received adequate dental care from a dentist, from February to August 1997, as she walked past his cell, evidencing deliberate indifference. Ms. Monroe undeniably had the authority to schedule dental exams for patients; therefore, she had some influence over whether or not Plaintiff received treatment. Assuming Plaintiff can prove that his requests for dental care were repeatedly made to Ms. Monroe and denied, a jury could find that these were not isolated occurrences, and, consequently, that the overall medical care - or lack thereof - illustrated deliberate indifference.

In sum, there are issues of material fact as to how many times Plaintiff saw a dentist, and whether the treatment received was woefully inadequate. In Plaintiff's deposition, he claims he would take "a lot of trips down" to get Tylenol and Motrin given to him by nurses. Significantly, although many of the exhibits are illegible, there is no evidence that Plaintiff received treatment beyond receiving Tylenol and Motrin.[22] It is unclear as to how many times Plaintiff actually saw a dentist, and, importantly, what transpired on those dates noted in his outpatient dental record

_____

[22]The record also contains a consent to dental treatment form, signed by Mr. Manney, dated February 24, 1997. (Consent Form, Ex. 6 to Def.'s SMF.) Although it appears that a dentist diagnosed Plaintiff's condition as a cavity and recommended a course of treatment involving surgical extraction if necessary, it appears that Mr. Manney only received Tylenol and Motrin during his stay at the CCJ.

(which is largely illegible). These are issues of material fact for a factfinder.[23] In sum, a reasonable jury could find that Plaintiff's dental condition was sufficiently serious, and that Ms. Monroe's actions rose to the level of deliberate indifference. Accordingly, the Court denies Defendant Monroe's Summary Judgment Motion.

### III. Plaintiff's Motion to File a Second Amended Complaint

On April 27, 2001, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, to add the County of Cook and Jean Kirriazes as Defendants. However, there is a fatal statute of limitations problem. In Section 1983 actions, "federal courts adopt the forum state's statute of limitations for personal injury claims." A. *Kelley's Garage, Inc. v. City of Northlake*, No. 00 C 1671, 2000 WL 1889671, at *2 (N.D. Ill. Dec. 28, 2000); *see also Wilson v. Garcia*, 471 U.S. 261, 280 (1985). In Illinois, "a two year statute of limitations applies to Section 1983 actions." *Savory v. O'Leary*, No. 90 C 7053, 1994 WL 282289, at *4 (N.D. Ill.

---

[23]Plaintiff also contends that he submitted thirty grievances, but the record reflects that there were only four. Plaintiff has failed to reproduce copies or any record evidence of these other twenty-six grievances. Although the Court has its doubts that thirty were submitted, how often Plaintiff complained, and whether Ms. Monroe's responses were adequate, will be left for the factfinder.

June 22, 1994), *citing Kalimara v. Illinois Dept. of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989). Moreover, it is well settled that "a new defendant cannot normally be substituted or added by amendment after the statute of limitations has run." *Hill v. Shelander*, 924 F.2d 1370, 1376 (7th Cir. 1991).

Here, Plaintiff's allegations of deliberate indifference to his medical needs began to accrue, at the latest, in October 1997, when he was transferred to Joliet and then Centralia.[24] Since Plaintiff seeks to file a Second Amended Complaint in July 2001 – approximately one and a half years after the two-year statute of limitations has expired - Plaintiff's claim against the additional Defendants will survive only if the Second Amended Complaint can "relate back" to the original Complaint. *See* Fed.R.Civ.P. 15(c).

Although a complaint may be barred by the applicable statute of limitations, Rule 15(c) of the Federal Rules of Civil Procedure creates an exception by allowing "the relation back of amendments changing or adding parties so long as no prejudice will ensue."

---

[24] Arguably, the statute of limitation began to accrue in September 1997, because Mr. Manney alleges that, from June to September 1997, his pain was "ridiculous", "unbearable", and that he could not describe it. (Manney Dep., at 53, Ex. 1 to Def.'s SMF.) However, giving Mr. Manney the benefit of the doubt, the latest accrual date would be in October 1997, when the CCJ transferred him to Joliet, and, therefore, Ms. Monroe did not have control over his medical care anymore.

*Woods v. Indiana Univ.-Purdue Univ. at Indianapolis*, 996 F.2d 880,

884 (7th Cir. 1993). More specifically, Rule 15(c) states that:

> An amendment of a pleading relates back to the date of
> the original pleading when . . . (2) the claim or defense
> asserted in the amended pleading arose out of the
> conduct, transaction, or occurrence set forth or
> attempted to be set forth in the original pleading, or
> (3) the amendment changes the party or the naming of the
> party against whom a claim is asserted if the foregoing
> provision (2) is satisfied and, within the period
> provided by Rule 4(m) for service of the summons and
> complaint, the party to be brought in by amendment (A)
> has received such notice of the institution of the action
> that the party will not be prejudiced in maintaining a
> defense on the merits, and (B) knew or should have known
> that, but for a mistake concerning the identity of the
> proper party, the action would have been brought against
> the party.

Fed.R.Civ.P. 15(c)(3). Thus, an amended complaint relates back to

the date of the filing of the original complaint only when: (1) the

amended complaint arises out of the same occurrence set forth in the

original complaint; (2) the added defendant has received such notice

of the institution of the action within the time period prescribed

by Rule 15(c) so that he will not be prejudiced in maintaining his

defense on the merits; and (3) the added defendant knew or should

have known that, but for a mistake concerning the identity of the

proper party, the action would have been brought against him or her.

*Wood v. Worachek*, 618 F.2d 1225, 1229 (7th Cir. 1980). The Court

38

will address requirements two and three in turn[25] with respect to Ms. Kirriazes and the County of Cook.

## A.   Jean Kirriazes

Plaintiff contends that Ms. Kirriazes, Director of Continuous Improvement at Cermak, would not be unfairly prejudiced by her addition at this late stage (over three and a half years after Plaintiff's allegations of deliberate indifference), because Defendants were allegedly aware that she was the proper person to be included in the lawsuit, and that it was by mistake that Plaintiff failed to include her in the Original and First Amended Complaint.   However, Plaintiff has failed to prove requirements two and three of the relation back doctrine.

Requirement two, notice "serves as the means for evaluating prejudice." *Woods*, *supra*, 996 F.2d at 888.   When examining whether the addition of a party would prejudice that party, courts must look at whether there was notice, and if the "quality of that notice was such as to negate 'prejudice' to a newly-added defendant." *Id*.   The pertinent question is "whether the adverse party, viewed as a

---

[25] Requirement one – that the amended complaint arise out of the same transactions that occurred in the original complaint – is undoubtedly met in this case, as Plaintiff is merely seeking to add additional Defendants and is retaining the original claims.

reasonably prudent person, ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question". *Id.*

In *Delgado-Brunet v. Clark*, 93 F.3d 339, 340 (7th Cir. 1996), an inmate brought suit against prison officials for violating his Eighth Amendment rights. After the lawsuit was dismissed, the plaintiff made a motion for reconsideration and the court allowed him to file an amended complaint. *Id.* at 341. After the statute of limitations expired, the plaintiff filed his amended complaint, seeking to add two officers to the action. *Id.* The Seventh Circuit affirmed the District Court's dismissal of the officers from the lawsuit as time-barred, because the officers never received any type of notice of the action, until the plaintiff tried to "amend" the complaint. *Id.* at 344.

Similarly, Plaintiff's amendment to add Ms. Kirriazes does not relate back, because she lacked sufficient notice of the action, and there was no way she could have known that she should have been a party. Just as the officers in *Delgado-Brunet* did not receive notice of the action against them until the Amended Complaint was served, Ms. Kirriazes did not receive notice of Mr. Manney's action

until he sought to add her with his proposed Second Amended Complaint. Furthermore, there is no way that Ms. Kirriazes could have received notice from Cermak's receipt of the original complaint, as Cermak itself was never even served with the summons and complaint. Because Cermak never had notice, Ms. Kirriazes - as a Director of Cermak - could not have had notice, especially during the period of time provided by Rule 4(m) for service of process, which is 120 days.[26]

Moreover, the defendant must receive sufficient notice such that the party is not prejudiced in maintaining a defense on the merits under Rule 15(c). *See Woods, supra,* 996 F.2d at 888. The Original Complaint in the case *sub judice* was filed on April 1, 1998. Plaintiff filed his Motion to Seek Leave to File a Second Amended Complaint on April 27, 2001, more than three years after the Original Complaint and three and a half years after Plaintiff's alleged personal injuries. Indeed, Ms. Kirriazes would be greatly

---

[26] Relation back under Rule 15(c)(3) is allowed if the newly named party received actual notice of the suit or became aware of the misidentification in the pleadings within 120 days of the filing of the original complaint. *Neptune Fireworks Co., Inc. v. Ahern,* No. 89 C 5074, 1995 WL 311395, at * 2 (N.D. Ill., May 18, 1995). Here, Cermak did not even receive its summons and complaint within 120 days of the filing of the Original Complaint. Therefore, Ms. Kirriazes did not receive notice within 120 days of the filing of the Original Complaint.

prejudiced by her addition to a lawsuit that was initiated three years earlier.[27] For instance, she has not been able to conduct pretrial discovery or prepare a trial defense.

Furthermore, with respect to the third requirement for relation back, Plaintiff asserts that he mistakenly named Cermak, a non-suable entity, as a Defendant instead of Ms. Kirriazes. He claims that the omission of Ms. Kirriazes as a Defendant should be attributed to his ignorance of her identity. However, Plaintiff does not meet the strict mistake requirement of Rule 15(c).

The Seventh Circuit does not define "mistake" broadly. *Gonzalez v. City of Chicago*, No. 95 C 6075, 1998 WL 89123, at *2 (N.D. Ill. Feb. 13, 1998)(citing cases). Importantly, relation back is not permitted in cases where there is merely a lack of knowledge of the party. *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993). Generally, it is permitted "to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which he is sued."

---

[27]Plaintiff argues that Defendants were aware that Ms. Kirriazes was the proper person to be included in this lawsuit, and that they cannot show how *they* would be prejudiced by *her* addition. When considering the prejudice to the parties, however, it is not the other Defendants the Court is concerned about. Rather, the Court is concerned about the prejudice to Ms. Kirriazes, the Defendant who is to be added to the lawsuit three and a half years after Plaintiff's alleged injuries.

*Id.* (*quoting Wood v. Worachek*, 618 F.2d 1225, 1229 (7th Cir. 1980).

Significantly - and fatal to Plaintiff's Motion for Leave to File a Second Amended Complaint - is that, whether or not the newly added party knew or should have known that the action should have been brought against her (requirement two) is irrelevant, when there is no mistake as to the identity of the proper party. *Id.*

In *Worthington*, *supra*, the plaintiff brought suit on the day that the statute of limitations expired against "three unknown named police officers" for purposefully injuring him during an arrest. 8 F.3d at 1254. When he sought to amend the complaint, he substituted the names with the names of the officers. *Id.* The Seventh Circuit held that the plaintiff's amendment did not relate back, because his failure to name the new defendants initially was "due to lack of knowledge as to their identity, and not a mistake in their names." *Id.* at 1256.[28] Similarly, in *Baskin v. City of*

_____

[28] More specifically, *Worthington* holds: "A plaintiff may usually amend his complaint under Rule 15(c) to change the theory or statute under which recovery is sought; or to correct a misnomer of plaintiff where the proper party plaintiff is in court; or to change the capacity in which the plaintiff sues; or to substitute or add as plaintiff the real party interest; or to add additional plaintiffs where the action, as originally brought, was a class action. *Thus, amendment with relation back is generally permitted in order to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which he is*
(continued...)

*DesPlaines*, 138 F.3d 701, 704 (7th Cir. 1998), the Seventh Circuit held that the plaintiff's second amended complaint did not relate back to the original complaint, because the plaintiff sought to amend his original complaint – six weeks after the statute of limitations had run – to add an officer as a defendant for allegedly violating his constitutional rights during a police stop. *Id.* at 703. The court found that the plaintiff was not mistaken as to the identity of the officer, but simply did not know the identity of the officer who had pulled him over. *Id.* at 704. Accordingly, the court found that this was not the type of mistake falling under Rule 15(c). *Id.*[29]

---

[28](...continued)

*sued.* But a new defendant cannot normally be substituted or added by amendment after the statute of limitations has run." 8 F.3d at 1256 (emphasis added) (citation omitted).

[29] More specifically, *Baskin* holds: "It has long been the law in this circuit that Rule 15(c)(3) permits an amendment to relate back to the original complaint only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake. Accordingly, it is equally well established that Rule 15(c)(3) does not permit relation back where . . . there is a lack of knowledge of the proper party. In fact, this court has emphasized that Rule 15(c)(3) contains a separate 'mistake' requirement. Indeed, in the absence of a mistake in the identification of the proper party, it is irrelevant for purposes of Rule 15(c)(2) [now Rule 15(c)(3) ] whether or not the purported substitute party knew or should have known that the action would have been brought against him." 138 F.3d at 704 (citations and internal quotations

(continued...)

Likewise, in the case *sub judice*, Mr. Manney apparently did not know Ms. Kirriazes' identity when he filed his Original, or even his First Amended Complaint. As the plaintiffs in *Baskin* and *Worthington* lacked knowledge of the identity of the officers who allegedly violated their rights when they filed their original complaints, Mr. Manney did not know during the two-year statute of limitations that Ms. Kirriazes was responsible for reviewing the grievances. In fact, it appears that Plaintiff did not discover her involvement until two Defendants identified her as the individual to whom grievances were forwarded. (Plaintiff's Response to Defendant's Motion for Summary Judgment, at 7 n.2.) It appears that Mr. Manney would not have added her to the lawsuit if it were not for Defendants' affidavits in support of their Summary Judgment Motion.[30] This clearly demonstrates Plaintiff's pure ignorance as

---

[29](...continued)
omitted).

[30] The Court further notes that four of Plaintiff's grievances in the record were all signed by Ms. Kirriazes. (*See* Grievances, Ex. 8 to Def.'s SMF.) Therefore, Plaintiff had the requisite knowledge – if he had been more diligent – to initially sue Ms. Kirriazes before the limitations period expired. Instead, he chose only to add Ms. Kirriazes as a Defendant after other Defendants made it painstakingly obvious that the grievances had been forwarded to her. Plaintiff's carelessness in researching his own case is not grounds for relation back.

to her involvement until after the limitations period had expired.

Amazingly, Plaintiff admits as much in his Motion for Leave to File

a Second Amended Complaint by stating "[t]he omission of Kirriazes

can only be attributed to Plaintiff's ignorance of her identity."

(Pl.'s Mot. for Leave to File a Second Am. Compl. ¶ 7.)

Consequently, his failure to name her initially (and in the First

Amended Complaint) as a Defendant was not a mistake; he simply did

not possess any knowledge of her involvement.[31]  *See White v.*

*Cooper,* 55 F. Supp.2d 848, 855 (N.D. Ill. 1999) (disallowing relation

back where "plaintiff failed to name the new defendants in his

original complaint because he *lacked knowledge as to the factual*

*allegations* supporting a claim against them"; plaintiff only

---

[31]Plaintiff notes that he filed his original Complaint as a *pro se* litigant, and did not know, at that time, that Cermak was a non-suable entity. Accordingly, Plaintiff moves to amend the Complaint to add Ms. Kirriazes, a Director of Cermak, in her individual capacity. However, Plaintiff obtained counsel between his Original Complaint, filed on April 1, 1998, and his First Amended Complaint filed on May 21, 1999. Now, Plaintiff seeks to add Ms. Kirriazes to the action by filing his Second Amended Complaint on April 27, 2001. His attorney should have recognized the "legal blunder" *pro se* litigants often make when choosing whom to sue before filing the First Amended Complaint, and corrected it at that time. The Court will not allow this amendment to relate back based on a legal mistake made by Plaintiff's counsel. It is Plaintiff's responsibility to find out whom to sue. These are not the type of mistakes falling under the mistake requirement of Rule 15(c). *See Lembach v. State of Indiana*, 987 F.Supp. 1095, 1104 (N.D. Ind. 1997).

received knowledge of new defendants after original defendants produced documents from an internal investigation)(emphasis added). In sum, Plaintiff does not meet requirements two and three of Rule 15(c)(3) to permit the addition of Ms. Kirriazes to this lawsuit.[32] Accordingly, the Court denies Plaintiff's Motion to File a Second Amended Complaint to add Ms. Kirriazes as a Defendant.

### B. Cook County

Plaintiff's Motion for Leave to File a Second Amended Complaint to add Cook County as a Defendant is denied for two reasons. First, as with Ms. Kirriazes, the proposed Second Amended Complaint would unfairly prejudice Cook County, and this is not a situation of a misnomer. Second, Plaintiff has failed to allege, in his proposed Second Amended Complaint, a Section 1983 cause of action against the County.

Plaintiff argues that Cook County would not be unfairly prejudiced by the delay in its addition as a Defendant, because Plaintiff brought this action against several employees of the Cook County Department of Corrections, and the Office of the State's

---

[32] Furthermore, as eluded to *supra*, even if Plaintiff had met requirement two, dealing with notice, his failure to satisfy requirement three, dealing with a mistake, is fatal to his claim. *See, Baskin, supra*, 138 F.3d at 704; *Worthington, supra*, 8 F.3d at 1256.

Attorney has undertaken their defense.[33]  However, the Seventh

Circuit has rejected the contention that relation back is proper

when all defendants, including newly-added defendants, share the

same counsel.  *Woods*, 996 F.2d at 889 n.14; *see also Moore v.*

*Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993) (service on shared

counsel alone is not sufficient under Rule 15(c)(3).)  As

demonstrated in *Wood*, *supra*, 618 F.2d at 1229-30, the Seventh

Circuit held that the addition of an officer to a civil rights

action after the statute of limitations had expired would be

prejudicial, even though the officer shared counsel with originally

named defendants.  The court noted that the newly-added officer was

not represented prior to the date that the plaintiff served him with

a summons and the amended complaint.  *Id.* at 1230.  The court

further remarked that the officer did not have the benefit of

pretrial discovery, or trial defense preparation, and would be

deprived of the statute of limitations defense.  *Id.*

Although the Office of the State's Attorney may have been aware

of this lawsuit, it does not necessarily follow that Cook County was

---

[33]Similar to Plaintiff's contention with respect to Ms.
Kirriazes, Mr. Manney argues that Cook County's addition will not
create a disadvantage for any *current* party.  Again, as discussed
*supra* with respect to Ms. Kirriazes, the Court is concerned with
the disadvantage or prejudice to Cook County, not the other
Defendants already before the Court.

aware of the lawsuit. Significantly, more than three years have passed since the Original Complaint was filed, and there is no evidence whatsoever to suggest that Cook County had actual or constructive knowledge of this lawsuit within the time period prescribed by Rule 15(c). This is not a situation where Plaintiff is merely trying to change the capacity of a defendant named in the original complaint. Accordingly, the Court finds that Cook County would be severely prejudiced by being included in this lawsuit over a year and a half after the limitations period has expired, and over three and a half years after Plaintiff's alleged constitutional deprivations.

Additionally, Plaintiff argues that he mistakenly sued Cermak, when Cook County should have known it was the proper party. As a preliminary point, if Cermak did not receive its summons and complaint, then it is hard to imagine how Cook County was put on sufficient notice that it was the intended party to be sued within the time period prescribed by Rule 15(c). Plaintiff also cites no case law to the effect that Cook County should have known that it was the proper party to be sued when Plaintiff erroneously sued Cermak Health Services. Furthermore, as discussed *supra* with respect to Ms. Kirriazes, this narrowly construed mistake exception is designed to cover misnomers and does not apply to Plaintiff's

simple ignorance of the proper party.[34]  In any event, there appears

to be no reason why Plaintiff did not attempt to add Cook County as

a Defendant on May 21, 1999, when the Complaint was originally

amended by Plaintiff's counsel.  At that time, Plaintiff's counsel

should have known that Cermak was a non-suable entity.

Even assuming that Plaintiff satisfied the notice and mistake

requirements of the relation back doctrine, Plaintiff's motion to

add Cook County as a Defendant would still be denied, because he has

failed to allege a policy, custom, or practice of Cook County that

caused the alleged constitutional deprivation.

"[A]s a general rule, a county is not vicariously responsible

for the alleged misdeeds of its employees." *Poole*, *supra*, 2000 WL

419991, at *4.   To sustain a Section 1983 action against a

government entity, a plaintiff must allege that a policy, custom or

practice of the government entity deprived the plaintiff of a

constitutionally protected interest.  *Monell v. New York Dept. of*

*Social Services*, 436 U.S. 658, 690 n.55 (1978); *Townsend v. Fairman*,

---

[34]Again, Plaintiff's counsel should have tried to correct
this mistake before filing the First Amended Complaint in May 21,
1999.  Though *pro se* complaints are construed more liberally due
to the complaintant's lack of legal sophistication, *see Poole v.*
*Bach*, No. 99 C 7624, 2000 WL 419991, at *1 (N.D. Ill. Apr. 14,
2000), Plaintiff had the opportunity to correct the mistake
nearly two years earlier, after obtaining counsel.

No. 95 C 0882, 1996 WL 99914, at *3 (N.D. Ill. Mar. 1, 1996). The existence of such a policy, custom, or practice can be proven by showing that: (1) there is an express policy causing a constitutional deprivation when enforced; (2) there is a well-established widespread practice, though not written or expressed in policy, that effectively acts as written law; or (3) the constitutional deprivation was caused by a person with the authority to make policy. *Egebergh v. Sheahan*, No. 96 C 5863, 2001 WL 15945, at * 4 (N.D. Ill. Jan. 4, 2001)(citation omitted).

In *Stone-El v. Sheahan*, 914 F. Supp. 202, 204 (N.D. Ill. 1995), a detainee at Cook County Jail sued the entity, the Sheriff of Cook County, for poor prison conditions that he, allegedly, experienced while in confinement. The court held that the plaintiff failed to sufficiently allege a Section 1983 claim because he did not allege that a policy, custom, or practice of the Sheriff of Cook County existed or caused the conditions he suffered at the Cook County Jail. *Id.* at 205.

Similarly, in the case *sub judice*, Plaintiff alleges in his proposed Second Amended Complaint that Defendants acted "under color of law and/or pursuant to policies, customs, practices, rules, regulations, ordinances, statutes and/or usages of the State of Illinois, the Department of Social Services and Housing of the State

of Illinois and/or the CCJ". (Plaintiff's Second Amended Complaint ¶ 26.) Significantly, Mr. Manney does not allege that an express policy - or widespread custom or practice - of *Cook County* existed that caused his alleged constitutional deprivations at the CCJ. *See, e.g., Neptune Fireworks, supra,* 1995 WL 311395, at * 3 (dismissing Cook County from lawsuit where plaintiff failed to allege that Cook County had a policy that violated plaintiff's constitutional rights). Plaintiff also does not allege that his constitutional deprivation was caused by a person with the authority to make policy. Therefore, a Section 1983 action cannot be brought against Cook County. Accordingly, Plaintiff's Motion for Leave to File a Second Amended Complaint to add Cook County is denied.

## CONCLUSION

For the reasons set forth above, the Court finds that there are genuine issues of material fact in dispute regarding the seriousness of Mr. Manney's dental condition, and whether or not Ms. Monroe exhibited deliberate indifference to his medical condition, in violation of the Fourteenth and Eighth Amendments to the Constitution. Accordingly, the Court denies Defendants' Motion for Summary Judgment with respect to Ms. Monroe. The Court finds, however, that Defendants Mueller, Chin, and Moore were not personally involved with Mr. Manney's alleged constitutional

deprivation, and, therefore, the Court grants Defendants' Motion with respect to these Defendants. The Court also finds that Cermak Health Services is not a suable entity, and, accordingly, dismisses Cermak from this lawsuit. Finally, the Court denies Plaintiff's Motion for Leave to File a Second Amended Complaint to add Ms. Kirriazes and the County of Cook as Defendants, because the statute of limitations has expired and the relation back doctrine does not apply.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment be, and the same hereby is, GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's Motion for leave to file a Second Amended Complaint be, and the same hereby is, DENIED.

Dated: July 27, 2001

Enter:

ARLANDER KEYS
United States Magistrate Judge